**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| KYLE HAYES, on behalf of himself and all other persons similarly situated, known and unknown, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 3:23-cv-03296 |
| | ) | |
| v. | ) | Hon. Judge Sue. E. Myerscough |
| CGB ENTERPRISES, INC., D/B/A | ) | |
| CONSOLIDATED GRAIN AND | ) | Hon. Mag. Judge Karen L. McNaught |
| BARGE CO., and CONSOLIDATED | ) | |
| TERMINALS AND LOGISTICS, CO. | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff, Kyle Hayes ("Plaintiff"), on behalf of himself and all other persons similarly situated, known and unknown, files this First Amended Class Action Complaint ("Complaint")[1] against Defendant CGB Enterprises, Inc., d/b/a, Consolidated Grain and Barge Co., and Consolidated Terminals and Logistics Co., for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*, and states:

**INTRODUCTION & SUMMARY OF CLAIMS**

1.    This case involves violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* by the Defendant.

2.    Specifically, this case involves the unlawful collection, use, retention, dissemination or disclosure, and storage of the Plaintiff's and putative class's biometric identifiers and information, in violation of BIPA.

---

[1] This matter was originally filed as a class action complaint in the Circuit Court of Sangamon County, case no. 2023LA000186, but was subsequently removed by Defendant pursuant to 28 U.S.C. § 1441(a) and (b), and Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Dkt. # 1, pg. 3-4.

3.      Defendant, CGB Enterprises, Inc. ("CGB") is a privately owned foreign corporation that operates as a diversified agricultural company.

4.      CGB operates in the State of Illinois through a variety of legal entities and/or divisions, including, but not limited to Consolidated Grain and Barge Co. ("Consolidated") and Consolidated Terminals and Logistics Co. ("CLTC"). Defendant is collectively referred to herein as "CGB."

5.      CGB is a subsidiary of the Zen-Noh Grain Corporation, a Louisiana-based corporation.

6.      Plaintiff, Kyle Hayes, is a former employee of CGB.

7.      At various times throughout his tenure working for Defendant, he was assigned to work for both Consolidated and CLTC.

8.      Regardless of the division and/or entity Plaintiff was informed that he was providing services to, at all times relevant herein, his wages were paid by "Consolidated Grain and Barge Co."

9.      As is set forth in greater detail below, CGB required Plaintiff and other employees to use a biometric "fingerprint" timeclock system to record their hours worked.

10.     Unlike an employee identification number or employee identification card, fingerprints are *unique* and *permanent* identifiers.

11.     By requiring employees to scan their fingerprints to record their time, instead of identification numbers or badges only, Defendant ensured that one employee could not clock in for another.

12.     Thus, Defendant received labor management benefits from using a biometric timeclock.

13.     Defendant, likewise, achieved financial benefits from using a biometric timeclock.

14.     Likewise, Defendant placed employees at risk based on the use of employees' biometric identifiers, after they had been made to use the biometric timeclock(s) in question and

without complying with the statutes addressed herein.

15.    As is set forth in greater detail below, CGB violated BIPA, in several respects, by: (1) improperly capturing and/or collecting the biometric identifiers of the Plaintiff and the class that he seeks to represent; (2) failing to provide adequate written notice, informing the Plaintiff and the class that he seeks to represent of the same; (3) failing to obtain written releases from the Plaintiff and the class he seeks to represent; (4) improperly disclosing and/or disseminating the biometric identifiers of the Plaintiff and the class he seeks to represent; and (5) failing to maintain Plaintiff and the class he seeks to represents' biometric identifiers consistent with industry standards. 740 ILCS 14/15(a-e).

## THE PARTIES

16.    Plaintiff is an individual and a citizen of Illinois.

17.    Defendant CGB operates in the State of Illinois through a variety of legal entities and/or divisions.

18.    Upon information and belief, CGB's principal office is located in Missouri.

19.    Upon information and belief, Consolidated is a division of CGB.

20.    Upon information and belief, CLTC is a division of CGB.

## JURISDICTION

21.    This Court has jurisdiction pursuant to 28 U.S.C. § 1441(a) and (b), and Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

## FACTS

22.    CGB operates grain silos, grain elevators, and affiliated offices throughout Illinois.

23.    Plaintiff was employed by CGB at its Naples, Illinois office and grain silo and elevator, from approximately August 2011 through November 2014, and again from September 2016, through June 2021.

24.    During his employment with CGB, Plaintiff held the following job titles: scale

operator, laborer, crane operator, grain handler, and headhouse operator.

25.     At all times and at all locations of his employment, in order to ensure his presence at work, CGB required Plaintiff to clock in and out, utilizing timeclocks located on their premises (the "CGB Timeclocks").

26.     CGB controlled, owned, operated, leased, and/or licensed the CGB Timeclocks, and any data or information contained therein.

27.     The actions of clocking in or out was required by CGB at least two times on each day that Plaintiff was at work.

28.     In order to clock in or out, the CGB Timeclocks captured a scan of a portion of his hand, to wit, his fingerprints, and converted the fingerprints to electronic images.

29.     Fingerprints, and any images of them, are unique to each individual.

30.     The electronic images of the fingerprints that CGB had collected were then stored in the electronic data files of at least one electronic data storage system ("EDSS"), controlled, owned, or operated by CGB.

31.     Upon information and belief, the electronic data files of the fingerprint images were disclosed to others, including third-party payroll services providers.

32.     Upon information and belief, the fingerprints, or their electronic images were stored on other EDSSs, including but not limited to:

      A.  Those controlled, owned, operated, leased, and/or licensed by CGB; and

      B.  Devices controlled, owned, operated, leased, licensed, and/or otherwise accessible to Defendant, as a result of a software license or contractual relationships with a third party, including but not limited to third-party payroll providers.

33.     The possession of the scanned images on the CGB Timeclocks, enabled CGB to identify an individual employee, thereby, ensuring that no one employee could clock in or out for

4

another.

34.    In addition, the possession of the scanned images that were stored on the CGB Timeclocks allowed Defendant to maintain records of the hours worked by their employees.

35.    Prior to Plaintiff's initial use of the CGB Timeclocks, neither Plaintiff, nor any other authorized representative of the Plaintiff, was ever informed in writing, or consented to, images of a portion of his hand and/or his fingerprints being collected or stored.

36.     Prior to Plaintiff's initial use of the CGB Timeclocks, neither Plaintiff, nor any authorized representative of the Plaintiff, was ever informed in writing of the specific purpose and length of term for which the images of a portion of his hand and/or his fingerprints were being collected, stored, and used.

37.    Prior to Plaintiff's initial use of the CGB Timeclocks, CGB never obtained in writing from Plaintiff, or any authorized representative of the Plaintiff, a written release, related to the use images of his hand, his fingerprints or any electronic images of them, that had been collected and captured by CGB.

38.    At all times relevant herein, CGB maintained a "privacy policy" on its website.[2]

39.    The first paragraph of this policy states as follows:

CGB Enterprises, Inc. is committed to protecting your privacy and developing technology that gives you the most powerful and safe online experience.  This Statement of Privacy applies to the CGB Enterprises, Inc. site and governs data collection and usage.  The Statement of Privacy describes the type of personal information we collect on this site and how we may use that information. By using the CGB Enterprises Inc site, you consent to the data practices described in this statement.[3]

40.    The policy goes on to state, further:

CGB Enterprises, Inc. collects and uses your personal information to operate the CGB Enterprises Inc Web site and deliver the services you have requested.  CGB

---

[2] https://www.cgb.com/privacy-policy/
[3] *Id.*

5

Enterprises Inc also uses your personally identifiable information to inform you of other products or services available from CGB Enterprises, Inc. and its affiliates.[4]

41.     Prior to Plaintiff's initial use of the CGB Timeclocks, there was no written policy posted or provided to Plaintiff at any of his worksites or via any other means, made publicly available, that explained how Plaintiff's data was being retained, how long it would be retained, or any other guidelines pertaining to the permanent destruction of his fingerprints or the electronic images of them, after the end of his employment.

42.     Upon information and belief, CGB undertook no investigation to determine whether its data privacy obligations extended to the collection, possession, storage, destruction, or disclosure of scans of portions of its employees' hands, to wit, their fingerprints, or of their fingerprints.

### BIOMETRIC INFORMATION PRIVACY ACT CLASS ACTION ALLEGATIONS

43.     Plaintiff seeks to represent a putative class, the "Class" pursuant to 735 ILCS 5/2-802.

44.     The Class consists of:

All current and former employees of Consolidated Grain and Barge Co., d/b/a CGB Enterprises, Inc. ("CGB"), including but not limited to employees hired by CGB to work at/in offices owned and operated by CGB Enterprises Inc., and employees hired to/who worked at CGB Enterprises, Inc.'s grain silos and elevators throughout Illinois, and employees hired by CGB to work at/for Consolidated Terminals and Logistics Co. ("CLTC"), who scanned their fingerprints and/or other biometric identifiers into the biometric timeclock mechanism, or whose biometric identifiers as defined under 740 ILCS 14/10 were utilized in any manner by CGB, between August 2018 and the present without first executing a written release.

45.     The Class's claims all stem from the same or substantially similar conduct, as they were all subject to the same allegedly illegal practices of CGB's failure to adhere to the requirements of BIPA.

46.     Defendant employed between 40 and 50 employees in its main office in Naples, Illinois, and at all times had a CGB Timeclock in that building.

---

[4] *Id.*

6

47.    During the two periods during which Plaintiff worked for CGB in its Naples, Illinois office and silo/grain elevator, there was significant employee turnover, such that on information and belief, in excess of over 100 people worked for CGB at those locations during the relevant timeframes.

48.    Likewise, at the grain silo and elevator at the same location in Naples, Illinois, there was an office for the outside employees who worked at the grain elevator, which contained a CGB Timeclock in the breakroom that employees used to clock in and clock out.

49.    In addition to the office and grain silo located in Naples, Illinois, CGB operates grain silos and elevators throughout Illinois.

50.    Each silo and/or elevator employs approximately 4-5 workers at any given time to operate the facility.

51.    Upon information and belief, there is substantial employee turnover at each of the grain silos and elevators described herein.

52.    The other silos and elevators operated by CGB includes, but are not limited to the following locations:

      a.    Princeton, Illinois;

      b.    Utica, Illinois;

      c.    Dwight, Illinois;

      d.    Alexis, Illinois;

      e.    New Berlin, Illinois;

      f.    Dixon, Illinois (Depot Avenue);

      g.    Dixon Illinois (Walton Road);

      h.    Smithshire, Illinois;

      i.    Hull, Illinois;

      j.    Monmouth, Illinois (Yorkwood);

k.   Monmouth, Illinois (Larchland);

l.   Media, Illinois;

m.   Little York, Illinois;

n.   Benton, Illinois;

o.   Colusa, Illinois;

p.   Albany, Illinois;

q.   Carthage, Illinois;

r.   Muncie, Illinois;

s.   Flagg, Illinois;

t.   Gladstone, Illinois (RR#1);

u.   Gladstone, Illinois (838 1650N);

v.   Gladstone, Illinois (PO Box 2096);

w.   Fithian, Illinois;

x.   Homer, Illinois;

y.   Oquawka, Illinois;

z.   Freeport, Illinois;

aa.  Nauvoo, Illinois;

bb.  Greenfield, Illinois;

cc.  Fulton, Illinois;

dd.  Ferris, Illinois;

ee.  Dallas City, Illinois; and

ff.  Cahokia, Illinois.

53.     Upon information and belief, at each silo and elevator, CGB required its employees to use the same or similar CGB Timeclock, employed between 4 and 5 workers at a time, and experienced

8

significant turnover.

54.     Likewise, the Naples facility is also shared with/used by CLTC.

55.     During Plaintiff's employment with CGB, all of its employees at the locations where he was assigned used the same CGB Timeclock to clock in and clock out, regardless of whether they purportedly worked shifts for CLTC or Consolidated or any other subsidiary entity to Defendant.

56.     Accordingly, the Class includes more than 50 members.

57.     The issues involved in this lawsuit present common questions of law and fact, including:

    A.  Whether CGB required members of the Class to scan their fingerprints to clock in and out during shifts;

    B.  Whether CGB collected the Class's "biometric identifiers" or "biometric information" under BIPA;

    C.  Whether CGB properly informed Plaintiff and the Class of its purposes for collecting, obtaining, using, storing and disseminating their biometric identifiers or biometric information;

    D.  Whether CGB obtained a written release (as defined in 740 ILCS § 14/10) to collect, obtain, use, store and disseminate Plaintiff's and the Class's biometric identifiers or biometric information;

    E.  Whether CGB has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information;

    F.  Whether CGB has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

    G.  Whether CGB developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and

biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of its last interaction with the individual, whichever occurs first;

H.    Whether Defendant complied with any such written policy (if one exists);

I.    Whether Defendant used Plaintiff's and the Class's fingerprints to identify them;

J.    Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

K.    Whether Defendant's violation of BIPA has deprived Plaintiff of a property right;

L.    Whether the violations of BIPA were committed negligently; and

M.    Whether the violations of BIPA were committed intentionally and/or recklessly.

58.    Plaintiff also anticipates that CGB will raise defenses that are common to the class.

59.    These common questions of law and fact predominate over variations that may exist between members of the Class, if any.

60.    A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually.

61.    Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation.

62.    Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying

adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

63. Plaintiff, the members of the Class, and CGB have a commonality of interest in the subject matter of the lawsuit and the remedy sought.

64. If individual actions were required to be brought by each member of either the Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Class, to the Court, and to Defendant.

65. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common funds to which the Classes are entitled.

66. The books and records of Defendant are material to Plaintiff's case as they disclose how and when Plaintiff and the Class had their fingerprints scanned in Defendant's CGB Timeclock system, and what information Defendant provided Plaintiff and the Class about the collection, retention, use, and dissemination of their biometric identifiers and information.

67. Plaintiff and his counsel will fairly and adequately protect the interests of the Class as Plaintiff's retained counsel is experienced in complex class action litigation.

**COUNT I**
**Violation of the Biometric Information Privacy Act (740 ILCS 14/15(b))**
**(Class Action)**

68. Plaintiff realleges and incorporates the previous allegations of this Class Action Complaint.

69. Defendant is a "private entity" under BIPA. 740 ILCS 14/10.

70. Plaintiff's and the Class's fingerprints qualify as "biometric identifier[s]" as defined by BIPA. 740 ILCS 14/10.

71. CGB possesses "biometric information" from Plaintiff and the Class through its collection, acquisition, possession, and retention of personal identifying information based on Plaintiff's and the Class's fingerprints.

72. CGB violated BIPA by capturing or collecting Plaintiff's and the Class's fingerprints and personal identifying information based on their fingerprints without first informing them in writing that it was doing so.

73. Defendant violated BIPA by capturing or collecting Plaintiff's and the Class's fingerprints and personal identifying information based on their fingerprints without first informing them in writing of the purpose of Defendant doing so, and the length of time Defendant would store and use Plaintiff's and the Class's biometric identifiers and/or biometric information.

74. Defendant violated BIPA by capturing or collecting Plaintiff's and the Class's fingerprints and personal identifying information based on their fingerprints without first obtaining their written consent or other release authorizing the Defendant to capture or collect Plaintiff's and the Class's biometric identifiers and/or biometric information.

75. Unlike other Illinois companies, Defendant failed to take notice of and follow BIPA's requirements even though the law was enacted in 2008 and numerous articles and court filings about BIPA's requirements were published before CGB committed the legal violations alleged herein.

76. Defendant's violations of BIPA were reckless or intentional or, in the alternative, negligent, as they demonstrated courses of action, which showed a knowing risk or conscious disregard that their conduct would harm the Plaintiff, the Class, and/or an utter indifference to, or conscious disregard for the biometric privacy rights of the Plaintiff and the class he seeks to represent, as well as the safety and security of their biometric identifiers and their property rights.

77. As a result of the conduct described in ¶¶ 22-42, and CGB's violation of 740 ILCS 14/15(b), the Plaintiff and the Class he seeks to represent suffered concrete and particularized harms,

to wit, the loss of the power and ability to make informed decisions about the collection, storage, and use of their biometric information.

78.     As a result of the conduct described in ¶¶ 22-42, and CGB's violation of 740 ILCS 14/15(b), the Plaintiff and the Class he seeks to represent suffered concrete and particularized harms, to wit, the loss of the power and ability to make informed decisions about a property interest, specifically, their property interests in their ownership of their personal biometric data or information.

WHEREFORE, Plaintiff and the Class pray for a judgment against Defendant as follows:

A.     Awarding liquidated or actual monetary damages, whichever is higher, to Plaintiff and Class for each violation of BIPA as provided by 740 ILCS 14/20(1)-(2);

B.     Enjoining Defendant from committing further violations of BIPA as authorized by 740 ILCS 14/20(4);

C.     Awarding Plaintiff's reasonable attorneys' fees and costs incurred in filing and prosecuting this action as provided by 740 ILCS 14/20(3); and

D.     Such other and further relief as this Court deems appropriate and just as provided by 740 ILCS 14/20(4).

## COUNT II
### Violation of the Biometric Information Privacy Act (740 ILCS 14/15(a))
### (Class Action)

79.     Plaintiff realleges and incorporates the previous allegations of this Class Action Complaint.

80.     Defendant is a "private entity" under BIPA. 740 ILCS 14/10.

81.     Plaintiff's and the Class's fingerprints qualify as "biometric identifier[s]" as defined by BIPA. 740 ILCS 14/10.

82.     CGB has "biometric information" from Plaintiff and the Class through its acquisition and retention of personal identifying information based on Plaintiff's and the Class's fingerprints.

13

83.    Defendant violated BIPA by possessing Plaintiff's and the Class's fingerprints and personal identifying information, based on their fingerprints, without creating and following a written policy, made available to the public, establishing a retention schedule and destruction guidelines for its possession of biometric information derived from Plaintiff's and the Class's fingerprints.

84.    Unlike other Illinois companies, Defendant failed to take notice of and follow BIPA's requirements even though the law was enacted in 2008 and numerous articles and court filings about BIPA's requirements were published before CGB committed the legal violations alleged herein.

85.    Unlike the statements made in the "privacy policy" depicted in ¶39, upon information and belief, Defendant failed to maintain a similar policy that protected Plaintiff from the disclosure of his fingerprints, or the electronic images of them, when they were stored in the various EDSSs or were transmitted to third party payroll providers.

86.    Defendant's violations of BIPA were reckless or intentional or, in the alternative, negligent, as they demonstrated courses of action, which showed a knowing risk or conscious disregard that their conduct would harm the Plaintiff, the Class, and/or an utter indifference to, or conscious disregard for the biometric privacy rights of the Plaintiff and the class he seeks to represent, as well as the safety and security of their biometric identifiers, and of their property rights.

87.    As a result of the conduct described in ¶¶ 22-42, and Defendant's violation of 740 ILCS 14/15(a), the Plaintiff and the Class he seeks to represent suffered concrete and particularized harms, to wit, the loss of the power and ability to make informed decisions about the collection, storage, and use of their biometric information.

88.    As a result of the conduct described in ¶¶ 22-42, and Defendant's violation of 740 ILCS 14/15(a), the Plaintiff and the Class he seeks to represent suffered concrete and particularized harms, to wit, the loss of the power and ability to make informed decisions about a property interest, specifically, their property interests in their ownership of their personal biometric data or information.

WHEREFORE, Plaintiff and the Class pray for a judgment against CGB as follows:

A.    Awarding liquidated or actual monetary damages, whichever is higher, to Plaintiff and the Class for each violation of BIPA as provided by 740 ILCS 14/20(1)-(2);

B.    Enjoining Defendant from committing further violations of BIPA as authorized by 740 ILCS 14/20(4);

C.    Awarding Plaintiff's reasonable attorneys' fees and costs incurred in filing and prosecuting this action as provided by 740 ILCS 14/20(3); and

D.    Such other and further relief as this Court deems appropriate and just as provided by 740 ILCS 14/20(4).

## COUNT III
### Violation of the Biometric Information Privacy Act (740 ILCS 14/15(d))
### (Class Action)

89.    Plaintiff realleges and incorporates the previous allegations of this First Amended Class Action Complaint.

90.    Defendant is a "private entity" under BIPA. 740 ILCS 14/10.

91.    Plaintiff's and the Class's fingerprints qualify as "biometric identifier[s]" as defined by BIPA. 740 ILCS 14/10.

92.    CGB possesses "biometric information" from Plaintiff, the Class, and the Class through its acquisition and retention of personal identifying information based on Plaintiff's and the Class's fingerprints.

93.    CGB violated BIPA by disclosing or otherwise disseminating Plaintiff's and the Class's fingerprints and information based on their fingerprints to third parties, including but not limited to CGB's time-keeping vendor, without first obtaining their consent for that disclosure or dissemination.

94.    Unlike other Illinois companies, Defendant failed to take notice of and follow BIPA's requirements even though the law was enacted in 2008 and numerous articles and court filings about

15

BIPA's requirements were published before CGB committed the legal violations alleged herein.

95.    As a result of the conduct described in ¶¶ 22-42, and Defendant's violation of 740 ILCS 14/15(d), the Plaintiff and the Class he seeks to represent suffered concrete and particularized harms, to wit, the loss of the power and ability to make informed decisions about the collection, storage, and use of their biometric information.

96.    As a result of the conduct described in ¶¶ 22-42, and CGB's violation of 740 ILCS 14/15(d), the Plaintiff and the Class he seeks to represent suffered concrete and particularized harms, to wit, the loss of the power and ability to make informed decisions about a property interest, specifically, their property interests in their ownership of their personal biometric data or information.

97.    Defendant's violations of BIPA were reckless or intentional or, in the alternative, negligent, as they demonstrated courses of action, which showed a knowing risk or conscious disregard that their conduct would harm the Plaintiff, the Class, and/or an utter indifference to, or conscious disregard for the biometric privacy rights of the Plaintiff and the class he seeks to represent, as well as the safety and security of their biometric identifiers, and of their property rights.

WHEREFORE, Plaintiff and the Class pray for a judgment against Defendant as follows:

A.    Awarding liquidated or actual monetary damages, whichever is higher, to Plaintiff and the Class for each violation of BIPA as provided by 740 ILCS 14/20(1)-(2);

B.    Enjoining Defendant from committing further violations of BIPA as authorized by 740 ILCS 14/20(4);

C.    Awarding Plaintiff's reasonable attorneys' fees and costs incurred in filing and prosecuting this action as provided by 740 ILCS 14/20(3); and

D.    Such other and further relief as this Court deems just and proper as provided by 740 ILCS 14/20(4).

16

## COUNT IV
### Violation of the Biometric Information Privacy Act (740 ILCS 14/15(e))
### (Class Action)

98.     Plaintiff realleges and incorporates the previous allegations of this First Amended Class Action Complaint.

99.     Defendant is a "private entity" under BIPA. 740 ILCS 14/10.

100.    Plaintiff's and the Class's fingerprints qualify as "biometric identifier[s]" as defined by BIPA. 740 ILCS 14/10.

101.    CGB possesses "biometric information" from Plaintiff, the Class, and the Class through its acquisition and retention of personal identifying information based on Plaintiff's and the Class's fingerprints.

102.    As set forth more fully in ¶¶ 1-67, Defendant failed to store, transmit, and protect from disclosure the Plaintiff's and the Class's biometric identifiers and information, using the reasonable standard of care within Defendant's industry, and failed to store, transmit, and protect said information in the same or more protective manner in which Defendant stores, transmits, and protects its other confidential and sensitive information.

103.    Unlike the statements made in the "privacy policy" depicted in ¶ 39, upon information and belief, Defendant failed to maintain a similar policy that protected Plaintiff from the disclosure of his fingerprints, or the electronic images of them, when they were stored in the various EDSSs or were transmitted to third party payroll providers.

104.    Upon information and belief, CGB's industry maintains a standard of care that requires a privacy policy that protects its employees from the disclosure of their biometric identifiers and/or information, or the electronic images of them.

105.    As a result of CGB's actions described herein, CGB violated the Illinois Biometric Information Privacy Act.

17

106.    Unlike other Illinois companies, Defendant failed to take notice of and follow BIPA's requirements even though the law was enacted in 2008 and numerous articles and court filings about BIPA's requirements were published before CGB committed the legal violations alleged herein.

107.    As a result of the conduct described in ¶¶ 22-42, and CGB's violation of 740 ILCS 14/15(e), the Plaintiff and the Class he seeks to represent suffered concrete and particularized harms, to wit, the loss of the power and ability to make informed decisions about the collection, storage, and use of their biometric information.

108.    As a result of the conduct described in ¶¶ 22-42, and CGB's violation of 740 ILCS 14/15(e), the Plaintiff and the Class he seeks to represent suffered concrete and particularized harms, to wit, the loss of the power and ability to make informed decisions about a property interest, specifically, their property interests in their ownership of their personal biometric data or information.

109.    Defendant's violations of BIPA were reckless or intentional or, in the alternative, negligent, as they demonstrated courses of action, which showed a knowing risk or conscious disregard that their conduct would harm the Plaintiff, the Class, and/or an utter indifference to, or conscious disregard for the biometric privacy rights of the Plaintiff and the class he seeks to represent, as well as the safety and security of their biometric identifiers, and of their property rights.

WHEREFORE, Plaintiff and the Class pray for a judgment against Defendant as follows:

A.    Awarding liquidated or actual monetary damages, whichever is higher, to Plaintiff and the Class for each violation of BIPA as provided by 740 ILCS 14/20(1)-(2);

B.    Enjoining CGB from committing further BIPA violations as authorized by 740 ILCS 14/20(4);

C.    Awarding Plaintiff's reasonable attorneys' fees and costs incurred in filing and prosecuting this action as provided by 740 ILCS 14/20(3); and

D.    Such other and further relief as this Court deems just and proper as provided by 740

ILCS 14/20(4).

Dated:  December 29, 2023

Respectfully submitted,

/s/ *Max P. Barack*

One of Plaintiff's Attorneys

The Garfinkel Group, LLC
Max P. Barack (ARDC No.: 6312302)
Haskell Garfinkel (ARDC No.: 6274971)
701 N. Milwaukee Ave
The CIVITAS
Chicago, Illinois 60642
Telephone: (312) 736-7991
max@garfinkelgroup.com
haskell@garfinkelgroup.com

*Attorneys for Plaintiff*